PETITION OF THE DEPARTMENT OF SOCIAL SERVICES TO
DISPENSE WITH CONSENT TO ADOPTION.[1]

Suffolk.  October 5, 1981. — December 15, 1981.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Adoption*, Dispensing with parent's consent.  *Minor*, Custody.  *Department of Social Services.*

Action of the Department of Social Services in placing a child in the foster
care of one of its employees did not require allowance of a motion by
the child's mother to dismiss a petition brought by the department to
dispense with her consent to the child's adoption; however, this court
disqualified the department from presenting the Commonwealth's
case in the proceeding. [710-713]
In a proceeding to dispense with a mother's consent to the adoption of
her child no good cause was shown to warrant disclosing to the mother
the identity of the prospective adoptive family. [713-717]

PETITION filed in the Suffolk Division of the Probate and
Family Court Department on September 29, 1978.

Questions of law were reported by *Fitzpatrick*, J., to the
Appeals Court.  The Supreme Judicial Court granted re-
quests for direct review.

*James W. Stone* for the minor.
*Michael Broad*, Assistant Attorney General (*Kenneth B.
Grooms* with him) for Department of Social Services.
*Paul F. Donovan* for the mother.
*James F. McHugh, R.J. Cinquegrana & John Reinstein*,
for Civil Liberties Union of Massachusetts, amicus curiae,
submitted a brief.

---

[1] The Department of Social Services has been substituted for the
Department of Public Welfare by St. 1978, c. 552, § 28.

ABRAMS, J.  A judge of the Probate Court reserved and reported two issues raised by the natural parent (mother)[2] at a hearing on the Department of Social Services' (department) petition to dispense with consent to adoption.  G. L. c. 210, § 3 (b).  At the outset of the hearing the department disclosed to the court the identity of the prospective adoptive family and filed a motion "to compel persons not to reveal the identity of pre-adoptive parents."[3]  The mother filed a motion to dismiss the department's petition.  The judge denied the department's motion and stayed the effect of the action pending appeal.[4]  A single justice of the Appeals Court enjoined counsel for each of the parties and the guardian ad litem from disclosing to the mother either the actual identity of the prospective adoptive family or any information which would lead to the discovery of such identity.[5]

Essentially, the mother claims that the department acted illegally in placing the child in the foster care of one of its employees, and, hence, the petition must be dismissed.  Alternatively, the mother claims that she is constitutionally entitled to know the identity of the prospective adoptive family.  We conclude that the petition should not be dismissed, but that the probate judge should replace the department by appointing a licensed child care agency to take over the investigation and presentation of the petition to dispense with consent.  See G. L. c. 210, § 3 (b).  We also

---

[2] The natural father has executed, and the department has accepted, a written surrender for adoption.  See G. L. c. 210, § 2 (procedure for giving written consent for adoption).

[3] Counsel for the child agrees that the identity of the prospective adoptive family should not be disclosed to the mother.

[4] The judge took no action on the mother's motion to dismiss.

[5] The single justice of the Appeals Court determined that the identity of a particular set of prospective adoptive parents was not relevant to any issue in proceedings conducted pursuant to a petition brought under G. L. c. 210, § 3 (b).  Additionally, the single justice concluded that in the particular circumstances of this case the potential harm to the child which would result from disclosure of the identity of the prospective adoptive family would outweigh any relevance of such disclosure.

384 Mass. 707                                                    709

Petition of the Department of Social Services to Dispense with Consent to Adoption.

conclude that the identity of the prospective adoptive family should be withheld from the natural mother.[6]

We summarize the interlocutory findings of the probate judge. On November 12, 1974, the natural mother gave birth to the child. At that time the mother was married but living apart from her husband. The parents are still separated, although not divorced or legally separated. Shortly after the mother and child moved to Massachusetts in 1976, the department received a report of suspected abuse or neglect. The child was removed from the natural mother's custody, pursuant to G. L. c. 119, § 24, and a District Court judge awarded temporary custody of the child to the department. Originally, the child was placed with an authorized foster parent. When that foster home became unavailable in 1977, the foster care was transferred to the home of an employee of the department.

On September 29, 1978, the department filed a petition to dispense with consent to adoption under G. L. c. 210, § 3 (*b*). The department also sought approval of a plan whereby the child would be adopted by one of the department's employees.[7] In January, 1980, the probate judge appointed a guardian ad litem for the child and separate counsel for the mother.

On September 11, 1980, the mother filed a motion to "construe" the order of the single justice (see note 5, *supra*),

_____

[6] Since we have concluded that the identity of the prospective adoptive family should be withheld from the mother, we have not set forth the precise questions reserved and reported as they tend to identify the adoptive family.

[7] The allowance of a petition pursuant to G. L. c. 210, § 3 (*b*), is *not* a final approval of the department's adoption plans. *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 376 Mass. 252, 262 n.2 (1978). *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 637 (1975). The actual adoption proceeding is brought pursuant to G. L. c. 210, § 5A, and "must be independently conducted and proved." *Petition of the Dep't of Pub. Welfare, supra*, quoting from *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 371 Mass. 651, 656 n.6 (1976). However, the court must "consider the plan [for adoption] proposed by the department or other agency initiating the petition," in a proceeding to dispense with consent. G. L. c. 210, § 3 (*c*).

so as to require that the identity of the adoptive parents be disclosed, in order to avoid a violation of her constitutional rights. The Probate Court judge allowed the "motion to construe," and reserved and reported the issues to the Appeals Court. On March 12, 1981, we granted the application for direct appellate review.

1. *Motion to dismiss.* The mother argues that the placement of the child in the home of one of the department's employees in 1977 was illegal,[8] or at least improper, and, hence, the petition should be dismissed. She argues by analogy to criminal procedure that we should apply an exclusionary rule to cases "in which agency action with respect to a family has been so arbitrary and irrational as to warrant a dismissal." The mother claims that her case is such a case. The mother contends that the taking of her child from her in 1977, by the department,[9] and all subsequent proceedings are tainted by the illegal conduct of the department; and, hence, the petition should be dismissed. Even assuming the department's conduct was illegal (a fact not established on this record), nowhere in her argument of

---

[8] The mother cites no authority to support her conclusion that the department's conduct was illegal, except the State Conflict of Interest Law, G. L. c. 268A, § 3 (*b*). On the limited record before us the statute does not appear to be applicable. At a minimum, we do not think that the Legislature intended the word "anything" in the statute to include children, or that the department acted other than in the proper discharge of its official duty.

[9] As we read the record, the child was placed with an authorized foster care family after a judicial hearing. At the hearing, the mother was entitled to notice, G. L. c. 119, § 24; the appointment of counsel, G. L. c. 119, § 29; and notice of a right to appeal, G. L. c. 119, § 27. Nothing in the record indicates whether the mother appealed the original award of temporary custody. If the mother did not appeal, she is precluded from collaterally attacking those proceedings in the termination hearing. "The issue raised in the [temporary custody] action was actually litigated in the earlier proceeding and was essential to the earlier judgment. Therefore, the doctrine of issue preclusion bars relitigation of that issue in the subsequent action between the same parties." *Gidwani* v. *Wasserman*, 373 Mass. 162, 168-169 (1977), and cases cited. See *Cambria* v. *Jeffery*, 307 Mass. 49 (1940); Restatement (Second) of Judgments § 68, and Comment h (Tent. Draft No. 4, 1977).

384 Mass. 707 711

Petition of the Department of Social Services to Dispense with Consent to Adoption.

this issue does the mother give any consideration to the best interests of the child. Any argument that fails to consider the best interests of the child is fatally flawed. "As parens patriae the State does not act to punish misbehaving parents; rather it acts to protect endangered children." *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 592 (1981). We reject the mother's suggestion that we should extend the exclusionary rule to termination proceedings, or that we should view them as criminal proceedings.[10]

Although we decline to dismiss these termination proceedings, we believe it would be prudent to disqualify the department from presenting the Commonwealth's case in these proceedings. In termination proceedings the department's professional responsibility is to protect the best interests of the child — to strengthen and encourage family life (G. L. c. 119, § 1), as well as, in some instances, to require

---

[10] In her brief the mother argues, essentially, that the fact that she is afforded counsel as a matter of Massachusetts law *(Department of Pub. Welfare* v. *J.K.B.*, 379 Mass. 1 [1979]; G. L. c. 119, § 29) entitles her to the full panoply of constitutional rights afforded criminal defendants. We do not agree. Indeed, the opposite conclusion could be reached. We have held that certain constitutional rights that attach in a criminal proceeding do not apply in these cases. See *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 592-593 (1981) (beyond a reasonable doubt standard of proof); *Custody of a Minor*, 375 Mass. 733 (1978) (double jeopardy). Cf. *Wyman* v. *James*, 400 U.S. 309, 318 (1971) (caseworker's visit to home not subject to Fourth Amendment proscription: "The dependent child's needs are paramount, and only with hesitancy would we relegate those needs, in the scale of comparative values, to a position secondary to what the mother claims as her rights").

However, "when the breakup of a family is threatened . . . an extra measure of evidentiary protection [is warranted]." *Custody of a Minor, (No. 1)*, 377 Mass. 876, 884 (1979). *Department of Pub. Welfare* v. *J.K.B., supra* at 4. The rights of the natural parents are protected by our requirement that the judge enter "specific and detailed findings demonstrating that close attention has been given the evidence and that the necessity of removing the child from his or her parents has been persuasively shown." *Custody of a Minor (No. 1)*, 377 Mass. 876, 886 (1979). The parent's right to counsel makes certain that all the facts are fully brought forth in the termination hearing, and that an extra measure of evidentiary protection is afforded to the natural parents.

"a partial or complete severance of the parent-child relationship." *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption,* 383 Mass. 573, 588. In this respect, the department has an obligation to the child, the parent, and the Commonwealth. Its functions are vital to ensuring that the best interests of the child as well as the sanctity of the family are protected to the fullest extent.

Moreover, the department has "vastly superior resources for investigation and presentation of its case," *Department of Pub. Welfare v. J.K.B.,* 379 Mass. 1, 4 (1979), and judges place great confidence in the reports of the department. Therefore, the department is extraordinarily influential in its capacity to interfere with family relationships between parents and children. Campbell, The Neglected Child: His and His Family's Treatment Under Massachusetts Law and Practice and Their Rights Under the Due Process Clause, 4 Suffolk U. L. Rev. 631, 645-663 (1970) ("For a number of reasons, the courts play a minimal role in exercising the state's care and protection policy. The real locus of decision making is within the [department], and the individual who tends to be the ultimate decision maker there, is the case worker"). See *Department of Pub. Welfare v. J.K.B., supra* at 3. In sum, the department must be free "from private interests and from private influence." *Commonwealth v. Tabor,* 376 Mass. 811, 819 (1978). "The problem is a 'Caesar's wife' problem. Not only must evil itself be avoided but any significant appearance thereof must likewise be avoided." *Younger v. Superior Court,* 77 Cal. App. 3d 892, 897 (1978).[11] Consequently, we conclude that the probate

---

[11] Since 1978 the department has had a regulation concerning placement of foster children with department employees. 106 Code Mass. Regs. § 288.031 (1978). This regulation provides: "All applications from Department personnel to become foster parents shall be referred to a private agency for evaluation. The decision of the private agency shall be final. . . . No child in a worker's and/or supervisor's caseload shall be placed in the worker's and/or supervisor's home. Whenever possible a child who is being placed with a Department employee should be from a

384 Mass. 707                                                713

Petition of the Department of Social Services to Dispense with Consent to Adoption.

judge should appoint a licensed child care agency to investigate and present this petition. See *In the Matter of Lisa M.*, 87 Misc. 2d 826 (N.Y. Fam. Ct. 1976); G. L. c. 210, § 3 (*b*).[12]

2. *Disclosure of the identity of the prospective adoptive family.* The mother argues that in this case we should not follow the Commonwealth's usual policy of nondisclosure of the identity of the prospective adoptive family. See G. L. c. 210, § 5C. See also *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 6 Mass. App. Ct. 477 (1978). The mother grounds her argument on the assertions that the policy of nondisclosure deprives her of the effective assistance of counsel. Hence, she concludes that to vindicate her constitutional rights the policy of nondisclosure should not be followed.[13] We do not agree.

The Legislature has determined that the identity of the prospective adoptive parents should be confidential. General Laws c. 210, § 5C, as amended through St. 1972, c. 800, § 6, requires that "[a]ll petitions for adoption, all reports submitted thereunder and all pleadings, papers or documents filed in connection therewith . . . shall not be available for inspection, unless a judge of probate of the county where such records are kept, for good cause shown,

---

different CSA [Community Service Area] than the one in which the employee works."

[12] The department claims that its evidence is largely documentary and not subject to a claim of bias. The department alleges, among other things, that the mother was tried in the State of Florida on the charge of having murdered her father, and that she was found not guilty by reason of insanity. The department claims that documents show that the mother was not responding to treatment and made no major improvements in her condition; and that she was released from Florida State Hospital despite the opinion of doctors that she was capable of violent behavior. An independent agency can determine whether the documents support the department's allegations.

[13] The mother also claims that she has a constitutional right to confront adverse witnesses, *Pointer* v. *Texas*, 380 U.S. 400, 403 (1965); and to be present in the courtroom at every stage of the proceedings, *Illinois* v. *Allen*, 397 U.S. 337, 342-343 (1970). We, however, have rejected the view that termination proceedings are criminal. See note 10, *supra*.

shall otherwise order."[14]  In § 5C, the Legislature indicated its intent to restrict disclosure of information, such as the identity of the adoptive parents,[15] even as to the parties, unless the party seeking disclosure can show good cause. The Appeals Court recognized this legislative policy in *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 6 Mass. App. Ct. 477 (1978).  In that case the court considered a plan submitted to it pursuant to G. L. c. 210, § 3 (c), and held that, although more detailed information about the prospective adoptive parents was required, "the department in describing its adoptive plan to the court [was] not called upon to identify prospective adoptive parents." *Id.* at 479.  The Appeals Court "directed the [Probate Court] judge to order the department to submit to him forthwith its adoptive plan for the child in sufficient detail, but without identifying any of the prospective adoptive parents by name or specific location." *Id.*

The policy of nondisclosure of the identity of prospective adoptive parents is not unique to Massachusetts. See, e.g., *Cohen* v. *Janic*, 57 Ill. App. 2d 309, 313 (1965); *People ex rel. Scarpetta* v. *Spence-Chapin Adoption Serv.*, 28 N.Y.2d 185, 195, cert. denied sub nom. *DeMartino* v. *Scarpetta*, 404 U.S. 805 (1971); *McDonald* v. *Berry*, 243 S.C. 453, 456 (1964); *Lee & Beulah Moor Children's Home* v. *Reimer*, 476 S.W.2d 665, 666 (Tex. 1972); *Lutheran Social Serv., Inc.* v. *Meyers*, 460 S.W.2d 887, 892 (Tex. 1970).  In "the opinion of doctors, psychiatrists, psychologists, social workers, and lawyers . . . it is better for the child, better for the adopting parents, and better for the natural mother if she does not

---

[14] It is significant to note that the 1972 amendment deleted the exception which read "except by the adopting parent or parents, the child or person adopted, their attorney of record, the persons appearing in opposition to such petition or their attorneys of record." G. L. c. 210, § 5C (as in effect until 1972), following the words, "shall not be available for inspection."

[15] General Laws c. 210, § 6, requires that a statement containing the names and addresses of prospective adoptive parents be filed before the court may issue a decree of adoption.  Under § 5C, this statement is a confidential record.

384 Mass. 707       715

Petition of the Department of Social Services to Dispense with Consent to Adoption.

know the names, address and telephone number of the adopting parents." Report and Recommendation of the Association's 1955 Special Committee on Adoption, Concerning the Anonymity of Adopting Parents, 31 L.A.B. Bull. 327 (1956). Confidentiality of the identity of prospective adoptive parents provides "both the child and the adopting parents from any undue harassment by natural parents," *McDonald* v. *Berry, supra,* and aids the new family in securing a stable, continuous family relationship. "The obvious problems, emotional and otherwise, which would likely result from such interference to the detriment of the child, and efforts of the adoptive parents to properly rear the same, are too basic and numerous to here require any elucidation or enumeration." *Id.* In addition, disclosure of the identity of prospective adoptive parents may have a chilling effect on the adoption process. "Should the court, without any showing of good cause, order the invasion of the privacy of . . . adoptive parents, which judicial conduct could well have a most damaging effect in making prospective adoptive parents reluctant to proceed with adoptions." *Id.* [16]

---

[16] Contrary to the mother's view here that such information cannot be withheld in an adversary proceeding, confidential information is often protected. Indeed, the order of the single justice of the Appeals Court does not differ materially from a protective order under Mass. R. Civ. P. 26 (c), 365 Mass. 772 (1974). See Comment, Protective Orders Prohibiting Dissemination of Discovery Information: The First Amendment and Good Cause, 1980 Duke L.J. 766, 800 ("the interests of the judicial system in a reasonable and effective discovery system militate in favor of a balancing approach that permits protective orders prohibiting dissemination in appropriate circumstances").

In civil cases, confidential information often has been protected from disclosure by the courts. See, e.g., *Keyes* v. *Lenoir Rhyne College,* 552 F.2d 579 (4th Cir.), cert. denied, 434 U.S. 904 (1977) (evaluations of faculty members); *Richards of Rockford, Inc.* v. *Pacific Gas & Elec. Co.,* 71 F.R.D. 388 (N.D. Cal. 1976) (sources of academic research); *Corbett* v. *Free Press Ass'n,* 50 F.R.D. 179 (D. Vt. 1970) (defendant's net profit). In criminal cases, the policy of disclosure is not absolute. For example, in *Commonwealth* v. *Swenson,* 368 Mass. 268, 277 (1975), we held that the identity of a confidential police informant need not be disclosed to the defendant absent a showing that disclosure would be of assistance to the defendant in proving his innocence: "In short, there was nothing to indicate that the informer's identity would be of any assistance in proving the

The department alleges that the mother has violently attacked and murdered one member of her family (the child's maternal grandfather), and may still be violent and mentally ill. Thus, the department contends that the possible danger to the prospective adoptive family and the child outweighs any claim to disclosure the mother might make. The single justice agreed with the department (see note 5, *supra*).

The mother, on the other hand, bases her claim solely on the contention that the department is biased. She has made no showing that disclosure of the identity of the prospective adoptive family would be of assistance in defending any allegation that she is an unfit parent. Nor has she shown that disclosure would be relevant on the issue whether dispensing with consent would be in the best interests of the child. We believe that counsel can demonstrate bias, prejudice, and any shortcomings in the presentation of the petition to the judge without the disclosure of the identity of the prospective adoptive family.[17]

Finally, "where a child's well-being is placed in issue, 'it is not the rights of parents that are chiefly to be considered.

---

defendant innocent." *Id.* See *Rugendorf* v. *United States*, 376 U.S. 528, 535 (1964); *Roviaro* v. *United States*, 353 U.S. 53 (1957). "The privilege, which is not absolute, should be respected as far as reasonably possible consistent with fairness to a defendant." *Commonwealth* v. *Douzanis*, *ante* 434, 441 (1981). See *Commonwealth* v. *Johnson*, 365 Mass. 534, 544-545 (1974).

[17] The opportunity to cross-examine the witnesses from the department who testify, if any, is sufficient to show possible bias and conflicts of interest. However, the judge should exercise control of the cross-examination so that the identity of the prospective parent, or the employee's exact position within the department, remains confidential. "Without derogating from the importance to a fair trial of the right to cross-examination . . . the courts of this Commonwealth have recognized that this right is not necessarily infringed by curbing inquiry where the matters sought to be elicited have been sufficiently brought to the attention of the trier of fact through other questioning or other means" (citations omitted). *Commonwealth* v. *Walker*, 370 Mass. 548, 572, cert. denied, 429 U.S. 943 (1976). See *Jennings* v. *Rooney*, 183 Mass. 577, 579 (1903); P.J. Liacos, Massachusetts Evidence 66 (5th ed. 1981). To the extent that the mother argues that there was undue delay in bringing the termination petition, an investigation by an independent agency should disclose any wrongdoing.

The first and paramount duty is to consult the welfare of the child.'" *Custody of a Minor*, 375 Mass. 733, 749 (1978), quoting from *Purinton* v. *Jamrock*, 195 Mass. 187, 199 (1907). "'To that governing principle every other public and private consideration must yield.' *Richards* v. *Forrest*, [278 Mass. 547, 553 (1933)]. . . . Although '[p]arents are the natural guardians of their minor child and entitled to its custody . . . [t]heir right will not be enforced to the detriment of the child.'" *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. at 588, quoting from *Richards* v. *Forrest, supra*. We conclude that the identity of the prospective adoptive family should not be disclosed.

The case is remanded to the Probate Court for further proceedings consistent with this opinion.

*So ordered.*