# RESCRIPT OPINIONS.

PETITION OF THE DEPARTMENT OF PUBLIC WELFARE TO DISPENSE WITH CONSENT TO ADOPTION. January 5, 1982. This is an appeal by the mother (the only interested parent) from a judgment allowing the petition of the Department of Public Welfare (department) pursuant to G. L. c. 210, § 3, to dispense with the need for her consent to the adoption of her son. The prospective adoptive parents are the foster parents who have cared for the minor child since he was three months old. On the authority of *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 371 Mass. 651 (1976), we affirm. See also *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 587-592 (1981).

After making "specific and detailed findings demonstrating that close attention has been given the evidence and that the necessity of removing the child from his . . . parent[ ] has been persuasively shown," *Custody of a Minor (No. 1)*, 377 Mass. 876, 886 (1979), the probate judge concluded that "the respondent . . . does not possess the current ability, fitness or capacity to care for [the child], nor is she now ready to assume parental responsibility for him," and that "it is the best interest of the minor child [name omitted], that he be adopted by the prospective parents." The judge's conclusions logically follow from his comprehensive subsidiary findings which are "not only not 'clearly erroneous' (see Mass.R.Dom. Rel.P. 52[a]) but amply justified by the totality of the evidence." *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 371 Mass. at 656. See in this regard, Ginsberg, Termination of Parental Rights — Suggested Guidelines for Proposed Findings of Fact, 25:10 B.B.J. 20 (1981).

As a result of the filing of a care and protection petition in a District Court (see G. L. c. 119, §§ 24-26), the child, then three months of age, was removed from the mother's custody and placed in foster care, where he has remained continuously to the present time. The child was thirty-one months old at the time the instant matter was heard by the Probate Court. "[T]he critical question is whether the [biological] parents are currently fit to further the welfare and best interests of the child." *Bezio v. Patenaude*, 381 Mass. 563, 576 (1980). We think that in the circumstances presented here a finding that the child is a probable victim of parental neglect would be fully warranted. See *Custody of a Minor*

*(No. 1)*, 377 Mass. at 882-883. (The judge, however, did not rely on the presumption permitted by § 3(c) of c. 210, in reaching his decision in this matter.) The judge's findings amply reveal "parental behavior which adversely affects the child" and support a determination that the "parent is unfit to further the welfare of the child." *Bezio* v. *Patenaude*, 381 Mass. at 579. We need not rehearse the judge's findings focusing on specific parental conduct which could properly be considered "seriously detrimental to the welfare of the child." *Id.* at 575. It is sufficient for our purposes here merely to recite three of those findings: (1) "The respondent was unable to demonstrate an ability to appropriately feed the child, despite repeated instruction by the Visiting Nurse's Association personnel"; (2) the respondent "was unable to follow advice concerning the administrations of medicated formulas, as needed by the child, both by over-use and underuse"; and (3) three months after the child had been placed in foster care the respondent "stated to the Quincy District Court that she no longer cared for the child and would simply give birth to another." (We note in passing that is precisely what she did less than fifteen months later.) "To the extent that these findings refer to the mother's past conduct, it is with the understanding that the problems described therein continue unabated through the present." *Custody of a Minor (No. 1)*, 377 Mass. at 883. In this regard the judge specifically found that the mother "has failed to alter her pattern of parental conduct and irresponsibility.in any signifi[cant] way since . . . she placed her child in the care of the Department."

In addition, the judge found that the child was "well-adjusted and very happy" and had developed a strong emotional bond to the prospective adoptive family and that "it would be traumatic to remove him from them." See *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 639 (1975); *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 371 Mass. at 657.

In sum, the trial judge adequately accomplished the tasks required by G. L. c. 210, § 3, see *Petition of Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 376 Mass. 252, 268-269 (1978), and could properly have concluded that the mother has "grievous shortcomings or handicaps that would put the child's welfare in the family milieu much at hazard." *Petition of Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. at 590, quoting from *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. at 646.

We treat the evidentiary issues and procedural claims in summary fashion.

a. There was no error in allowing social workers of the Department to testify in these proceedings. The prohibitions of G. L. c. 112, § 135, as in effect prior to its amendment by St. 1981, c. 91, did not bar such testi-

mony. Compare G. L. c. 233, § 20B(e). See generally Liacos, Massachusetts Evidence 187-189 (5th ed. 1981). Notwithstanding the fact that nowhere in the record was it made to appear that the social workers were "in any licensed category" within the meaning of the statute, we think that phrase — "a communication that reveals the contemplation . . . of . . . a harmful act" — in (b) of the statute is sufficiently broad to cover proceedings under G. L. c. 210, § 3, where the assessments of "unfitness of the parent" and "best interests of the child" are "cognate and connected." *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. at 641. See in this regard, St. 1981, c. 91, amending G. L. c. 112, § 135, where inapplicability to proceedings under G. L. c. 210, § 3, is made explicit.

b. The respondent's due process claims are totally without merit. Cf. *Wyman* v. *James*, 400 U.S. 309, 318 (1971) ("The dependent child's needs are paramount, and only with hesitancy would we relegate those needs, in the scale of comparative values, to a position secondary to what the mother claims as her rights"). Passing the question whether these claims were raised in the trial court, we are unable to see any denial of any process that was due. See, e.g., *Mathews* v. *Eldridge*, 424 U.S. 319, 334-335 (1976). On our review of the record, we are unable to say that the proceedings in the Probate Court were fundamentally unfair or tainted by error of law. See *Department of Pub. Welfare* v. *J.K.B.*, 379 Mass. 1, 4-5 (1979), where it was established that a parent is entitled to be represented by counsel in proceedings under G. L. c. 210, § 3. See also in this regard, G. L. c. 119, § 29. Moreover, it has not been made to appear on this record how the mother might have been prejudiced or adversely affected by any of the actions of the department. Nor has the mother shown that any additional process would be of assistance in defending against any allegation that she is an unfit parent or aid the court in its determination of whether dispensing with consent would be in the best interests of the child. "Any argument that fails to consider the best interests of the child is fatally flawed." *Petition of the Dept. of Social Services to Dispense with Consent to Adoption*, 384 Mass. 707, 711 (1981).

*Judgment affirmed.*

*Evelyn V. Henry* for the mother.

*Joan C. Stoddard*, Assistant Attorney General, for Department of Public Welfare.