# Adoption of Eduardo.[1]

No. 02-P-659.

Worcester. October 17, 2002. -- February 4, 2003.

Present: Gelinas, Doerfer, & Green, JJ.

*Adoption,* Dispensing with parent's consent. *Parent and Child,* Dispensing with parent's consent to adoption. *Evidence,* Cross-examination, Bias. *Conflict of Interest.*

In a proceeding to dispense with a mother's consent to the adoption of her son in which the mother contended that the Department of Social Services (department) had a conflict of interest due to her pending lawsuit against the department for monetary damages, the judge did not err in denying the mother's motion to strike the department's appearance as the petitioner in this case, where there was no evidence that the department was motivated by extraneous factors, where evidence in the case was provided by a variety of witnesses (few of whom were closely affiliated with the department), where the mother was represented vigorously throughout the trial, and where all adverse witnesses were subject to cross-examination. [279-281]

In a proceeding to dispense with a mother's consent to adoption in which the mother failed to raise the issue of the alleged inadequacy of services provided by the Department of Social Services (department) for her special needs, but also consistently refused to admit that she had problems that needed addressing, the judge properly found by ample evidence that the department repeatedly offered services to the parents and that these services were designed and intended to correct or alleviate the parents' problems. [281-282]

In a proceeding to dispense with a mother's consent to adoption, the judge properly focused on the adverse effects the mother's behavior had on her ability to provide for her child's welfare and best interests, and not on the mother's mental illness. [282-283]

PETITION filed in the Worcester Division of the Juvenile Court Department on August 11, 1999.

The case was heard by *Louis D. Coffin,* J.

*Margaret M. Geary* for the mother.

---

[1] A pseudonym.

*Richard A. Salcedo* for Department of Social Services.

*Claudia Leis Bolgen* for the child.

*John T. Ouderkirk, Jr.,* for the father, was present but did not argue.

DOERFER, J. This is an appeal by a mother from a Worcester Juvenile Court judge's grant of a petition of the Department of Social Services (DSS) to dispense with her consent to the adoption of her son pursuant to G. L. c. 210, § 3. The mother argues (1) that DSS had a conflict of interest and that the trial judge erred in denying her motion to strike its appearance as the petitioner in this case; (2) that DSS did not accommodate her manifest mental health needs as required by various State and Federal disability laws and by the statutory requirement under G. L. c. 119, § 1, that DSS strengthen and encourage family life; and (3) that the court impermissibly treated her mental illness as per se evidence of unfitness and that there was insufficient evidence of a nexus between her mental disability and her alleged unfitness to justify the termination decree. We affirm.

1. *Conflict of interest.* The mother has a long and antagonistic history with DSS. She herself was in foster care under DSS auspices until the age of three and one-half, at which time she was adopted. Thereafter, she had a continuing series of difficulties as a child and adolescent resulting in outpatient and inpatient treatment at various mental health facilities. She and her adoptive mother attribute her difficulties to alleged abuse while she was in foster care prior to her adoption, and they had brought an action against DSS in regard to that alleged abuse prior to and during the pendency of the present petition.

In light of this history, the intervention of DSS in connection with the mother's care of Eduardo was viewed by the mother with suspicion and hostility. Recognizing this, DSS assigned its duties for supporting the family to the Center for Human Development (CHD). That agency worked with the mother, explained and reviewed the service plans, and attempted to arrange for the provision of specific services so that she could overcome her difficulties and deficits as a parent. CHD began working with the family in October, 1999, prior to Eduardo's removal in November, 1999, and continued to try to work with the mother until April, 2000 — at which point the goal changed

to adoption due to the mother's lack of cooperation and progress. Management of the case then reverted to DSS.

The mother sought to strike the appearance of DSS at trial, focusing on the pending litigation for "wrongful adoption" and supplementing her argument by reference to alleged unfair treatment during the intervention of DSS in the matter before us. There was, however, no evidence that DSS was motivated by extraneous factors in these proceedings because it was being sued for money damages by the plaintiff in another action. There was no evidence of animosity by DSS toward the plaintiff unrelated to its concerns for the child, or that DSS was seeking to punish the mother for bringing a suit against it, or to put pressure on her to abandon her suit in the hope that DSS would be more receptive to her claims that she was a satisfactory parent.

The mere pendency of the other litigation is not sufficient to compel an inference that there was an improper ulterior motive behind the present case. There need be no per se rule that the mere pendency of litigation by a parent against DSS requires disqualification of DSS as an advocate against that parent in a custody case. Such an inflexible approach is not required to preserve the integrity of the process and could lead to undesirable litigation strategies. "The opportunity to cross-examine the witnesses from the department who testify, if any, is sufficient to show possible bias and conflicts of interest." *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 384 Mass. 707, 716 n.17 (1981). Where there is "clear and convincing evidence of [parental] unfitness that is either uncontested or not dependent upon DSS, [and where] the judge [is] fully aware of the potential for bias and therefore able to give the testimony from DSS its appropriate weight," there is no per se need to disqualify DSS as the petitioner, and the judge's decision to dispense with the mother's consent to adoption can be reviewed on the merits. *Adoption of Natasha*, 53 Mass. App. Ct. 441, 452 (2001). Cf. *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption, supra* at 710-713.

The evidence in the case was provided by a variety of witnesses, few closely affiliated with DSS. Only two of the ten wit-

nesses at trial were DSS employees: a case manager and an adoption supervisor. Three were from independent agencies that had tried to help the mother.[2] The mother was represented vigorously throughout the trial. All adverse witnesses were subject to cross-examination, thereby providing an occasion to flush out any biases based upon allegiance to DSS. Accordingly, we conclude that, in the circumstances of this case, DSS's appearance as the petitioner was proper.

2. *Accommodating the mother's mental health needs and strengthening family life.*[3] The trial judge properly found by ample evidence that DSS repeatedly offered services to the parents and that these services were designed and intended to correct or alleviate the parents' problems. All such efforts to help clean up an extraordinarily filthy apartment, secure new housing, teach them to parent Eduardo better, properly handle domestic issues, and identify and treat any mental health problems were rebuffed. The mother also consistently refused evaluation for psychiatric problems, even when required by service plans to which she agreed and court orders she accepted. She failed to continue treatment with her therapist and to take the medications prescribed by her physician.

"DSS's obligation to work with the mother was contingent upon her own obligation to fulfill various parental responsibilities, including seeking and utilizing appropriate services." *Adoption of Serge*, 52 Mass. App. Ct. 1, 9 (2001). Compare *Care & Protection of Elaine*, 54 Mass. App. Ct. 266, 273-274 (2002). "If a parent believes that [DSS] is not reasonably accommodating a disability, the parent should claim a violation of his rights under either the [Americans with Disabilities Act] or other antidiscrimination legislation, either when the parenting plan is adopted, when he receives those services, or shortly thereafter. At that point, the court or the department may address the parent's claim." *Adoption of Gregory*, 434 Mass. 117, 124 (2001). Here, not only did the parent fail to raise the inadequacy

[2]These three were a case manager from CHD, a mental health therapist from Pioneer Valley Child and Family Services, and a case manager from the Department of Mental Health. Remaining witnesses were two neighbors, the mother, the father, and the maternal grandmother.

[3]There is no need to set forth the details of the findings or evidence supporting those findings.

of services for her special needs, but she also consistently refused to admit that she had problems that needed addressing. Because the mother failed to make use of the services offered to strengthen and then reunify her family and denied her mental health needs by refusing both evaluation and treatment, she cannot successfully argue that DSS's reasonable efforts failed to accommodate properly her mental health needs or to strengthen her family. See *Adoption of Mario*, 43 Mass. App. Ct. 767, 774 (1997).

3. *The nexus between the mother's mental illness and her ability to parent Eduardo.* The mother claims that the trial judge's findings "reveal that he treated [the] Mother's illness not as a disability to be overcome by competent case work but as evidence of unfitness" and that the evidence did not link the mother's mental illness to harm to Eduardo. On the contrary, the court explicitly recognized that mental illness per se is not grounds to terminate parental rights. The court focused on the performance of the mother as a parent and not on her mental illness except as it might explain her failures as a parent.

DSS diligently and reasonably tried to provide appropriate services to assist the mother in addressing her problems. Nevertheless, the mother repeatedly demonstrated an unwillingness to utilize these services and a consistent inability to provide a safe and healthy home for her son. As noted above, the mother's denial of her problems, her refusal to be evaluated or to take prescribed medication, her repeated failure to cooperate with even non-DSS service providers, her noncompliance with court orders and DSS service plans, and, most importantly, her inability to maintain a safe and healthy home for her son are the grounds the judge relied upon to support the termination of her parental rights.

We are satisfied that the judge properly focused on the adverse effects that parental behavior had on this parent's ability to provide for Eduardo's welfare and best interests, and not on the mother's mental illness. See *Adoption of Quentin*, 424 Mass. 882, 887 (1997). The judge did not, as argued by the mother, terminate the mother's parental rights based on her mental illness, and her reliance on *Adoption of Katharine*, 42 Mass. App. Ct. 25, 28-31 (1997), is misplaced. In Eduardo's

case, it is not the existence of the mother's mental health issues that dictated the judge's conclusions, but rather the results of the mother's parenting and its actual and predicted effects on Eduardo. Although the parents managed to perform appropriately in rare instances when necessary, the record is clear that the parents did not adequately maintain an apartment when they lived there together with Eduardo. Moreover it was even worse when the mother lived there alone after the father vacated and the child was removed. Even starting with a clean apartment, the mother's neglect over a roughly three-month period was sufficient for the sanitation problems to affect her neighbors adversely, ultimately resulting in her eviction.

*Conclusion.* To the extent that the mother is unable, due to psychological reasons, to care for her son properly by controlling her volatile nature and maintaining a safe and healthy home environment, her refusal to consider or address her mental health problems constitutes a continuing risk to Eduardo. To the extent that the cause of the abuse and neglect results not from psychological problems but from her unwillingness to work with service providers and conform her behavior to at least minimally adequate parenting, the risk of continued abuse and neglect to Eduardo is manifest.

The record in this case supports the findings, which are specific and detailed, which show that close attention has been given to the evidence, and which prove the mother's unfitness clearly and convincingly in conformity with the principles discussed in *Adoption of Quentin*, 424 Mass. at 886, and *Custody of Eleanor*, 414 Mass. 795, 799 (1993).

*Decree affirmed.*