After trial, a judge of the Juvenile Court found the father unfit to parent his two daughters, Maryanne and Sara, terminated his parental rights, and approved the adoption plan of the Department of Children and Families (department), pursuant to G. L. c. 210, § 3. On appeal, the father contends that (1) the department failed to furnish adequate support services in order to transition the children to his care; (2) the judge failed to consider much of the evidence favorable to him; and (3) the judge placed inappropriate weight on the children's bonds with the foster parents. We affirm.
1. Background. We summarize the relevant facts and procedural history from the judge's findings. Following investigation of reports of neglect, in October, 2011, the department filed a care and protection petition, pursuant to G. L. c. 119, § 24, on behalf of Maryanne (born in August, 2011), and obtained temporary custody of her. While that petition was pending, the mother and the father had another child, Sara, in July, 2012. One day after her birth, the department filed a care and protection petition on behalf of Sara, and was granted temporary emergency custody of her as well. The children were placed with the same foster parents, who are also the preadoptive parents, and with whom they have remained during the course of the proceedings.
In September, 2013, after the two petitions were consolidated, a trial commenced. At the conclusion of trial, the mother and the father stipulated that they were currently unfit and that the children were in need of care and protection. Following a multiday trial in November and December, 2014, the judge found the children in need of care and protection, terminated the mother's parental rights,[3] and, separately, found the father unfit but did not terminate his rights at that time; the judge explained that although the father appeared to not have benefited from the services he received, a determination regarding termination was premature until he completed an evaluation of his parenting skills and psychological functioning.
Two experts conducted assessments of the father before trial resumed in November, 2015. Both testified during this phase of the trial. Based on all of the evidence, the judge concluded that the father remained unfit and that it was in the children's best interests to terminate the father's parental rights. Most notably, he found that the father suffers from lasting anger management issues, has little insight into his extensive history of perpetrating domestic violence, and lacks insight into the children's special needs and their ability to overcome a disruption of their attachment to their foster parents.
2. Termination of parental rights. A decision to terminate parental rights requires a two-step analysis. See G. L. c. 210, § 3 ; Adoption of Nancy, 443 Mass. 512, 515 (2005). First, the judge must find, by clear and convincing evidence, that the parent is unfit and will continue to be unfit into the indefinite future. See Adoption of Jacques, 82 Mass. App. Ct. 601, 606, 610 (2012). Second, the judge must determine whether the termination of parental rights serves the best interests of the children. Id. at 606. The judge's decision will remain undisturbed unless the findings of fact are clearly erroneous or there is a clear error of law or abuse of discretion. Adoption of Ilona, 459 Mass. 53, 59 (2011).
"Parental unfitness must be determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age." Adoption of Mary, 414 Mass. 705, 711 (1993). "Because childhood is fleeting, a parent's unfitness is not temporary if it is reasonably likely to continue for a prolonged or indeterminate period." Adoption of Ilona, 459 Mass. at 60. A "faint hope" that the parent will become fit at some point in the future, without more, will not defeat a finding of continuing unfitness. Id. at 59-60. In making this decision, the judge may properly take into account "prognostic evidence derived from an ongoing pattern of parental neglect or misconduct." Custody of a Minor (No. 1), 377 Mass. 876, 883 (1979).
Here, the judge's detailed findings of fact and conclusions of law clearly and convincingly establish the father's unfitness. The judge properly applied the statutory criteria of G. L. c. 210, § 3(c ), in arriving at this conclusion. The father does not challenge any of the findings of the judge as erroneous, nor does he directly challenge the finding that he remained unfit.[4] Instead, he raises three counter arguments focused on undermining the conclusion that termination was in the children's best interests. We address each.
a. Inadequate support services. The father contends that the department did not do enough to reunite him with his children during the period after the 2014 finding of unfitness, in violation of its duty to "make 'reasonable efforts' aimed at restoring the child to the care of the natural parents" before seeking to terminate parental rights. Adoption of Ilona, 459 Mass. at 60 (quotation omitted). See G. L. c. 119, § 1. Yet, he failed to request such additional support at that time. Compare Adoption of Gregory, 434 Mass. 117, 124 (2001) (where parent opposing termination of rights claims that department violated Americans with Disabilities Act, "parent must raise a claim of inadequate services in a timely manner so that reasonable accommodations may be made"). Additionally, the department's duty to make reasonable efforts is contingent on the parent's fulfilment of his own responsibilities, including service plan compliance. See Adoption of Mario, 43 Mass. App. Ct. 767, 774 (1997) ; Adoption of Eduardo, 57 Mass. App. Ct. 278, 282 (2003). As the judge found here, the father did not utilize the services he was offered on a regular and consistent basis.
Even if the department had failed to meet its obligation of reasonable efforts, however, that would "not preclude the court from making any appropriate order conducive to the child's best interest." Adoption of Ilona, 459 Mass. at 61, quoting from G. L. c. 119, § 29C. While courts protect the rights of parents, "the parents' rights are secondary to the child's best interests and ... the proper focus of termination proceedings is the welfare of the child." Adoption of Gregory, 434 Mass. at 121. See Adoption of Inez, 428 Mass. 717, 720 (1999), quoting from Care & Protection of Robert, 408 Mass. 52, 62 (1990) ("While parents have a constitutionally recognized interest in maintaining the family unit, a 'child's interest in freedom from neglect or abuse is absolute' "). Thus, the father's reasonable efforts argument fails to undermine the judge's best interests finding.
b. Consideration of father's efforts. The father next contends that the judge's decision to terminate his parental rights was unsupported because the judge inappropriately ignored evidence proving that he had benefited from the services he received. Contrary to this assertion, the judge specifically considered that the father completed anger management classes and domestic violence programs, participated in an autism support group, was participating in individual counseling, and attended all visits with the children. However, the judge also considered that the father continues to lack insight into his parenting deficiencies, has minimized his domestic violence and anger issues, and has demonstrated an inability to consistently cooperate with service providers and the department or sustain meaningful improvements. Although the father relies on the testimony of his own expert concerning his progress, the judge was entitled to rely on the competing expert. See Custody of Two Minors, 396 Mass. 610, 618 (1986).
While the father is to be lauded for the positive steps he has taken to improve his situation, good intentions are not alone sufficient indicia of ability adequately to care for children. See Care & Protection of Three Minors, 392 Mass. 704, 712 (1984). Indeed, "[e]ven where a parent has participated in programs and services and demonstrated some improvement, we rely on the trial judge to weigh the evidence in order to determine whether there is a sufficient likelihood that the parent's unfitness is temporary." Adoption of Ilona, 459 Mass. at 59-60. The judge's finding that the father's unfitness was not temporary was adequately supported in the record.
c. Children's attachment to the foster parents. The judge found that the children "have formed a secure primary attachment to" the foster parents, but "have little attachment to the father." The father argues that the judge's conclusion that the children "have formed a very strong bond with" the foster parents did not comport with the applicable law regarding bonding as a basis to terminate his parental rights. See G. L. c. 210, § 3(c)(vii). He argues that the judge instead impermissibly compared which caretaker might be better for the children. In determining whether to terminate a parent's rights, a trial judge must consider the best interests of each of the children individually. See Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption, 20 Mass. App. Ct. 689, 697 (1985). A child's "special needs are relevant because they bear on whether this particular [father] ... can be a fit parent to this particular child." Adoption of Abigail, 23 Mass. App. Ct. 191, 193 (1986).
Here, the judge found that the father had no understanding of the children's psychological and emotional needs. Since birth, Sara's condition has been medically complex, requiring early intervention services. Maryanne requires special services for autism and speech delays. From all that appears in the record, both children will continue to require constant medical monitoring and special care, and the judge found that a bond has formed between the children and the foster family, who have demonstrated a high degree of commitment to the children's special needs.
Although a child's bond with his or her foster parents cannot be the sole basis for a decision to terminate parental rights, the existence of such a bond may be given weight when there is other evidence of parental unfitness, as is true in the instant case. See Adoption of Frederick, 405 Mass. 1, 7 (1989) ; Adoption of Rhona, 63 Mass. App. Ct. 117, 127 n.10 (2005). Given the father's weaknesses in identifying and responding to the children's emotional needs, it was not error for the judge to conclude that the father "lack[ed] the capacity to meet the special needs of the child[ren] upon removal" from the care of their foster parents. See G. L. c. 210, § 3(c )(vii), as amended by St. 1999, c. 3, § 17. There was no error in the judge's consideration of the children's bond with the foster parents.
Decrees affirmed.

The mother did not appeal from the termination of her parental rights.

He does briefly argue that the "evidence supporting the judge's finding of unfitness is stale" because it is based on the "circumstances that necessitated the filing of the Petition and not on his parenting ability at the time of the trial." Yet, the judge made nearly 100 findings that deal directly with the father's status as of the November, 2015, trial.