NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-434

ADOPTION OF OTTO[1] (and two companion cases[2]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother appeals from decrees of the Juvenile Court terminating her parental rights to her three children, Otto, Anne, and Burt, and approving the adoption plans of the Department of Children and Families (department).  On appeal, the mother maintains that the evidence did not clearly and convincingly establish that her unfitness was not temporary or that termination was in the children's best interests.  The mother also claims that the department failed to make reasonable efforts to reunify her with the children, and that the trial judge was unfairly partial towards the department.  We affirm.

---

[1] A pseudonym.

[2] Adoption of Anne and Adoption of Burt.  The children's names are pseudonyms.

Background.  The mother and the father are the parents of Otto (born 2015), Anne (born 2016), and Burt (born 2018).[3]  The mother and the father were married at the time of trial.

The mother's history with the department began in 2006, when she lost custody of her two oldest children from a previous relationship (who are not the subjects of these proceedings) to her mother, the maternal grandmother; and the involvement resumed in 2015 when Otto, her first child with the father, was born.  The department filed the underlying care and protection petitions for each subject child shortly after his or her birth and obtained emergency custody based on evidence of the mother's mental health challenges and cognitive limitations.  Several months after each child's birth, the department changed the permanency goal from reunification to adoption.

The trial judge found that the mother's untreated mental illness and cognitive limitations negatively affected her ability to be a parent to the children.  Since 2015, the mother has yelled at and threatened department social workers on numerous occasions, including threatening to have family members "shoot up" the department's office.  The mother has struggled to interact with the children appropriately during supervised

_____

[3] The father stipulated to his unfitness and the termination of his parental rights midtrial on July 21, 2022, and is not a party to this appeal.

2

visits, including allowing them to engage in dangerous behavior and providing them with inappropriate food and medications. The department has created various action plans for the mother, but the mother's engagement in the department's referred services has been inconsistent, and she has failed to substantially benefit from the services in which she has engaged. The mother has undergone multiple psychiatric hospitalizations but has consistently denied needing mental health treatment. The mother was previously appointed a guardian ad litem but the trial judge found in July 2022 after trial had commenced that she was able to assist in her defense, understood the nature of the proceedings, and was competent to continue to stand trial.

A trial took place over five nonconsecutive days between May and July 2022; the mother attended each day of the trial. After hearing testimony from five witnesses, including the mother, and admitting dozens of exhibits, the judge found that the mother was unfit, her unfitness was likely to continue into the indefinite future as a near certitude, and that the department had made reasonable efforts to reunite the children with her. The judge terminated the mother's parental rights and approved the department's proposed plan for the children's adoption by their longtime foster mother as in the best interests of the children.

3

Discussion.  1.  Termination of mother's parental rights.
"In deciding whether to terminate a parent's rights, a judge
must determine whether there is clear and convincing evidence
that the parent is unfit and, if the parent is unfit, whether
the child's best interests will be served by terminating the
legal relation between parent and child."  Adoption of Ilona,
459 Mass. 53, 59 (2011).  Clear and convincing evidence means
that "[t]he requisite proof must be strong and positive; it must
be 'full, clear and decisive.'"  Adoption of Chad, 94 Mass. App.
Ct. 828, 838 (2019), quoting Adoption of Iris, 43 Mass. App. Ct.
95, 105 (1997).  "We review the judge's findings with
substantial deference, recognizing her discretion to evaluate a
witness's credibility and to weigh the evidence," Adoption of
Nancy, 443 Mass. 512, 515 (2005), "and reverse only where the
findings of fact are clearly erroneous or where there is a clear
error of law or abuse of discretion."  Adoption of Ilona, supra.

"[T]he best interests analysis . . . requires a court to
focus on the various factors unique to the situation of the
individual[s] for whom it must act."  Custody of a Minor, 375
Mass. 733, 753 (1978).  "The standard for parental unfitness and
the standard for termination are not separate and distinct, but
'reflect different degrees of emphasis on the same factors.'"
Adoption of Nancy, 443 Mass. at 515, quoting Petition of the New

4

England Home for Little Wanderers to Dispense with Consent to Adoption, 367 Mass. 631, 641 (1975).

"Parental unfitness is determined by considering a parent's character, temperament, conduct, and capacity to provide for the child's particular needs, affections, and age." Care & Protection of Vick, 89 Mass. App. Ct. 704, 706 (2016). "Although 'stale information cannot be the basis for a finding of current parental unfitness[,] . . . [p]rior history . . . has prognostic value.'" Adoption of Jacques, 82 Mass. App. Ct. 601, 607 (2012), quoting Adoption of George, 27 Mass. App. Ct. 265, 268 (1989). In terminating parental rights, it is also "appropriate for a judge to consider whether, on the basis of credible evidence, there is a reasonable likelihood that the parent's unfitness at the time of trial may be only temporary" (citation omitted). Care & Protection of Zeb, 489 Mass. 783, 788 (2022). "Because childhood is fleeting, a parent's unfitness is not temporary if it is reasonably likely to continue for a prolonged or indeterminate period." Adoption of Ilona, 459 Mass. at 60. "Stability in the lives of children is important, particularly in a case that has continued for a long period of time in the hope that the [parents] could and would successfully rehabilitate [themselves]." Adoption of Nancy, 443 Mass. at 517.

The mother does not contest the trial judge's finding that she is currently unfit to be a parent to her children. She instead maintains that the judge erred in determining that her unfitness was not temporary, and that the department, by providing inadequate services, was responsible for her continued unfitness. The mother also asserts that the judge did not properly credit her progress.

The mother points to four occasions spanning 2018-2019 in which she had positive interactions with the children during the parents' supervised visits, positing that those occasions demonstrate her parenting capacity. As did the trial judge, we credit the mother for those positive interactions. The record before the judge, however, showed that the mother did not have consistently positive and safe interactions during visits with the children. Further, the mother lost custody of her two oldest children for similar reasons in 2006, but did not address those reasons in the intervening years.

"A judge may not decline to dispense with consent based on a faint hope that the family will succeed if reunited." Adoption of Virgil, 93 Mass. App. Ct. 298, 302 (2018), quoting Adoption of Inez, 428 Mass. 717, 723 (1999). Given that the mother was not able to make substantial progress in the seven years between Otto's birth and the trial, nor in the sixteen years since she had lost custody of her older children, and

considering childhood's "fleeting" nature, we cannot say that the trial judge abused her discretion by finding that the mother's unfitness was likely to continue indefinitely.  See Adoption of Ilona, 459 Mass. at 60.

Further, despite receiving diagnoses of paranoid schizophrenia and cognitive limitations, the mother continued to deny having a mental illness or a need for treatment and medication.  She had been inconsistent with department and mental health services and treatment since the department first gave her an action plan in 2015, and she has never been in full compliance with a department action plan.  See Adoption of Luc, 484 Mass. 139, 146-147 (2020).  Here, as in Adoption of Luc, the concern was "not that the mother has mental health challenges, but that those challenges remained largely unaddressed, and even unacknowledged," to the children's detriment.  Id. at 146 n.17.  See Adoption of Frederick, 405 Mass. 1, 9 (1989) (parent's mental disorder is relevant to extent that it affects parent's capacity to assume parental responsibility).  Although the mother made some positive efforts with respect to her action plan, including seeing a counselor at times and attending some parenting classes, these efforts have not resulted in meaningful progress in improving her mental health or parenting abilities.  She continued to deny having a mental illness or needing mental health treatment and demonstrated little benefit from attending

7

parenting classes. This evidence further supports the judge's conclusion that the mother's unfitness was likely to continue. See Adoption of Ilona, 459 Mass. at 59 (appellate courts give "substantial deference" to decision that termination of parent's rights is in children's best interests, and "reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion").

2. Reasonable efforts. In deciding whether a parent's unfitness is merely temporary, "[a] judge may consider the department's failure to make reasonable efforts [to reunify the parent and children]." Adoption of Ilona, 459 Mass. at 61. "Where a parent, as here, has cognitive or other limitations that affect the receipt of services, the department's duty to make reasonable efforts to preserve the natural family includes a requirement that the department provide services that accommodate the special needs of a parent." Id. On appeal, the mother maintains that the department failed to make reasonable efforts at reunification and failed to provide adequate services tailored to her mental health issues.

"It is well-established that a parent must raise a claim of inadequate services in a timely manner." Adoption of Daisy, 77 Mass. App. Ct. 768, 781 (2010), S.C., 460 Mass. 72 (2011). "The parent should assert the claim 'either when the parenting plan is adopted, when [s]he receives those services, or shortly

8

thereafter.'"  Adoption of West, 97 Mass. App. Ct. 238, 242 (2020), quoting Adoption of Gregory, 434 Mass. 117, 124 (2001). "A parent cannot raise a claim of inadequate services for the first time on appeal," to ensure the department has an opportunity to address any problems.  Adoption of West, supra. Where a parent "perhaps could have raised the issue more pointedly at trial," but inadequate services "was a theme that ran through the life of the case," however, we may still properly review the issue.  See Adoption of Chad, 94 Mass. App. Ct. at 839 n.20.  Here, while the mother never formally raised the issue before or during trial, the department was aware that the services it offered the mother had not had a significant impact on her action plan compliance, and the mother questioned several witnesses at trial about whether the department had made reasonable efforts and had provided adequate services. Accordingly, reasonable efforts and inadequate services were "a theme that ran through the life of the case," and we may review the claim.  See id.

On appeal, the mother asserts that the department should have provided a parent aide, a visiting nurse, and a referral for a shelter, and should have held an Americans with Disabilities Act (ADA) accommodation meeting.  "Reasonable efforts [are] generally understood to include accessible, available, and culturally appropriate services that are designed

9

to improve the capacity of families to provide safe and stable homes for their children and to ensure that parents and other family members . . . are making progress on case plan goals" (quotations and citation omitted).  Care & Protection of Rashida, 488 Mass. 217, 219 (2021).  "The department's obligation to make reasonable efforts to reunify the child with the mother is contingent upon her obligation to substantially fulfill her parental responsibilities (including seeking and using appropriate services)."  Adoption of Yalena, 100 Mass. App. Ct. 542, 554 (2021).  Here, evidence that the mother at many times refused department services and failed to follow through on referrals amply supported the judge's determination that the department met its obligations and "complied with its duty to make 'reasonable efforts . . . to prevent or eliminate the need for removal [of the children] from the home.'"[4]

---

[4] At oral argument the department represented that its failure to offer an ADA accommodation meeting resulted from the mother's denial that she had a mental illness or disability and failure to follow through on the department's referrals for diagnostic testing, as the department could not diagnose her.  But the findings of fact are clear that the mother was diagnosed with schizophrenia and other mental health and cognitive issues numerous times, including at least once during the course of this case; indeed, the department first tasked the mother with engaging with the Department of Mental Health due to her schizophrenia diagnosis in 2016.  Nonetheless, for the same reasons that we conclude that the department made reasonable efforts more generally, we decline to find that the department rendered inadequate services by any failure to provide an ADA meeting.

Adoption of Ilona, 459 Mass. at 61, quoting G. L. c. 119, § 29C. See Adoption of Daisy, 77 Mass. App. Ct. at 782 (mother's delay in obtaining therapy for herself undermined her inadequate services claim); Adoption of Eduardo, 57 Mass. App. Ct. 278, 282 (2003) ("Because the mother failed to make use of the services offered to strengthen and then reunify her family and denied her mental health needs by refusing both evaluation and treatment, she cannot successfully argue that [the department's] reasonable efforts failed to accommodate properly her mental health needs or to strengthen her family").

3. Fairness of trial court findings. "A judge's determination of custody must be based on the best interests of the child, after an 'even handed' assessment of the evidence." Adoption of Helga, 97 Mass. App. Ct. 521, 528 (2020), quoting Adoption of Hugo, 428 Mass. 219, 225-226 & n.8 (1998), cert. denied sub nom. Hugo P. v. George P., 526 U.S. 1034 (1999). "A judge's findings are entitled to substantial deference, and we will not disturb those findings unless they are clearly erroneous." Adoption of Helga, supra. The mother claims that the trial judge's findings were not evenhanded and that the judge did not fully consider all of the evidence, including evidence that was positive for the mother. To the contrary, we conclude that the trial judge demonstrated, through numerous unchallenged findings and conclusions, that she paid careful

11

attention to the evidence, weighing both the positive and the negative, and therefore did not abuse her discretion.

The mother further claims that the judge erred by not including in her findings parts of a social worker's testimony. Where, as here, a "judge's factual findings were specific and detailed, demonstrating that close attention was paid to the evidence and the fourteen factors listed in G. L. c. 210, § 3 (c)," we cannot say that the trial judge clearly erred by not including specific facts or giving more weight to certain facts than others. Adoption of Nancy, 443 Mass. at 516.

Decrees affirmed.

By the Court (Meade, Hershfang & D'Angelo, JJ.[5]),

*Joseph F. Stanton*

Clerk

Entered: October 17, 2023.

---

[5] The panelists are listed in order of seniority.