NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1180

CARE AND PROTECTION OF PEONY.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Pursuant to a petition filed by the Department of Children and Families (department) under G. L. c. 119, § 24, a judge of the Juvenile Court adjudicated the mother currently unfit to parent the child, Peony, and granted permanent custody to the father. The mother's parental rights were not terminated. The judge ordered supervised visits with the mother and the child's older siblings every other week. The mother appeals, arguing that (i) the judge erred and violated her due process rights by limiting her access to the department's file; (ii) several of the judge's findings of fact and conclusions of law were clearly erroneous; and (iii) there was insufficient evidence of harm to the child from the mother's behavior to justify the custody order. We affirm.

_____

[1] A pseudonym.

We summarize the facts as found by the judge, supplemented by undisputed evidence from the record and reserving some facts for our discussion. Peony was born in June 2017;[2] the mother and father were not married and are no longer in a relationship, but both have been involved in Peony's care. The judge found that the mother had "a very difficult history of trauma and sexual abuse in her own life as a child." The department began working with the mother in December of 2014, before Peony was born, when it investigated reports of neglect of the mother's two older children.[3] The investigation revealed that the mother and maternal grandmother were sharing adult matters with the older children and that the mother's mental health raised concerns. By October 2016, however, the department had closed the case because the mother was gainfully employed and demonstrated an ability to support the older children "financially, emotionally, and physically."

---

[2] In addition to Peony, the mother has two children, born in 2008 and 2009, by another father. The portion of the care and protection petition pertaining to the older children was dismissed; the judge found that there was "no evidence that the mother obsessively question[ed] or physically examine[d] the older children in her care," and "she appear[ed] to meet their basic needs." The father of the older children did not participate in these proceedings. Unless otherwise specified, references herein to "the father" refer to the father of Peony.

[3] The department's involvement began when the mother reported that she suspected her stepfather of sexually abusing her son (one of the two older children); the department investigated the report but found it unsupported.

2

In December of 2017, the department received a report pursuant to G. L. c. 119, § 51A (51A report), from the police alleging neglect of all three of the children following a physical altercation. The altercation involved the mother, Peony's father, and the paternal grandmother, and resulted in the mother's arrest for domestic assault and battery. A subsequent care and protection action was dismissed on June 28, 2018. Thereafter, the parents shared custody; the father had visits with Peony every other weekend overnight and every other weekday after work.

Over the course of several months in the spring and summer of 2019, the mother reported concerns that the father had been inappropriately touching Peony.[4] Visits with the father were suspended temporarily by a judge of the Probate and Family Court. In April, Peony was examined by her pediatrician who did not observe any evidence of sexual abuse; the department did not support the allegation. The probate judge ordered visitation with the father to resume in the late spring of 2019. After the

---

[4] Specifically, the mother reported that Peony told her that the father had "licked her 'pee pee,'" Peony exhibited some sexualized behavior, the father exhibited "suspicious" behavior while changing Peony's diaper, and that Peony had developed a fear of trains and when asked, replied "daddy" and "pee pee." In addition, the mother reported that after a visit to the father, Peony's vagina looked "different." The judge did "not credit [the m]other's testimony that [Peony] made a consistent disclosure of sexual abuse by [the f]ather."

3

mother refused to allow Peony to visit with the father, the probate judge found the mother in contempt, and she was ordered to comply with the visitation schedule.

Over the following four days, on seven occasions the mother requested police to do a well-being check of Peony while she was in the father's care. On July 8, 2019, Peony returned to the mother following an extended visit with the father, and the mother noted during a diaper change that Peony's vagina appeared "different." The mother brought Peony to Community Health Programs (CHP), where a pediatrician examined her and did not note any concerns. The mother testified that, when they returned home, she undressed Peony and observed ten to twelve circles with dots and scratches on Peony's back, leading the mother to theorize that Peony was injected with something. The judge specifically declined to credit the mother's testimony about this. The mother brought Peony to a hospital emergency room where ten or so faint circular marks were observed on Peony's back; there, the mother also repeated her concerns about Peony's "private parts." The doctor did not observe anything notable, but informed the mother that she should make an appointment with a specialist in sexual abuse at a nearby hospital if she wanted further medical assessment.

The reports that the father sexually abused Peony ultimately were screened out by the department after an

4

investigation and the district attorney's office did not pursue charges. The events of July 8 and July 9, 2019 resulted in removal of all three of the children from the mother on an emergency basis. This care and protection petition was filed on July 11, 2019, due to the department's concerns about the mother's "mental health, her growing preoccupation with the allegations of sexual abuse, and her conduct of continually subjecting [Peony] to invasive and unnecessary examination." After a hearing, the judge awarded temporary custody of Peony to the father and ordered supervised visitation with the mother.[5]

During July through October 2019, the mother continued to make accusations against the father, calling the police on multiple occasions to (i) inquire about a case against the father, and (ii) request that they make well child checks; she also called the FBI to share her concerns regarding Peony's sudden fear of trains. She also contacted the "Steve Wilkos Show" in an effort to have the father take a lie detector test. In August 2019, the father obtained a harassment prevention order against the mother. In the following months, although the mother began therapy, she continued to examine Peony's genitals during visits and to report concerns to the social worker and to excessively contact the police.

---

[5] The two older children were returned to the mother after the hearing.

5

The department's investigation concluded that the allegations of sexual abuse by the father were unsupported and allegations of neglect by the mother were supported. The judge found that the mother "has harmed [Peony] by continually questioning her about sexual abuse and obsessively checking her genitalia for signs of abuse." The judge did not credit the mother's testimony that Peony made statements indicating the father sexually abused her, as the statements and conduct "have been assessed by law enforcement and medical professionals and determined not to warrant further action against" the father.

After a multiday trial, and based on the foregoing findings of fact, among others, the judge found that the mother was currently unfit to assume parental responsibility of Peony and that Peony's best interests would be served by granting the father permanent custody. The judge found that the mother "struggles with mental health issues, and . . . perseverates on accusing . . . [the f]ather of sexually abusing [Peony] when there is no credible evidence." The judge noted that the mother participated in therapy for one year from December 2019 to January 2021 but, "never changed her belief that [Peony] was sexually abused, has not shown the ability to move on or forward from these allegations, and she has not gained any insight into how her behavior affects and harms [Peony]." Further, "at the time of trial, [the m]other was not engaged in any services. In

6

the absence of any treatment or help, the Court [was] convinced that [the m]other [would] continue to obsessively question [Peony], and check the child's body and genitalia, for what she believes will be signs of sexual abuse." As a result, the judge concluded that supervised visits should continue. The judge found that the mother "has no insight whatsoever that what she has done, and what she is still doing, is harmful to her daughter."

Discussion. 1. Discovery. During the discovery phase, counsel for the mother was allowed to withdraw due to other commitments. Thereafter, the mother chose to represent herself and rejected the judge's offer to assist her in finding counsel. The judge conducted a colloquy to ensure that the mother understood the disadvantages of proceeding pro se and that her decision was informed and knowing.

Thereafter discussion turned to providing discovery to the mother. Both counsel for the department and counsel for the child expressed concerns about sensitive matters being in circulation and sought a protective order requiring the mother to review the documents in the Juvenile Court Clerk's office or an order compelling the return of the documents at the end of the litigation. The mother said she understood and shared the concerns about "things" being on social media, and she told the

judge she would be able to go to the Clerk's office to view the documents.  The judge offered to allow further access if needed.

At a later hearing, after the judge noted the "great disadvantage" of representing herself, the mother agreed to allow the judge to appoint standby counsel.  At yet another hearing, the mother mentioned that other commitments had made it difficult for her to review the documents but did not ask the judge to change the way that discovery had been made available to her.

On appeal, the mother's principal argument is that due process and fundamental fairness compel the conclusion that discovery disclosures were inadequate.  However, the mother neither objected to the procedure nor made any related motions prior to or during trial.  The issue is waived.  See McLaughlin v. American States Ins. Co., 90 Mass. App. Ct. 22, 33 n.17 (2016).  "An issue not raised or argued below may not be argued for the first time on appeal" (citation omitted).  Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).  See Adoption of Donald, 52 Mass. App. Ct. 901, 901 (2001) ("As a general practice we do not consider issues, particularly constitutional ones, raised for the first time in this court" [citation

omitted]).  Here, the judge gave the mother ample opportunity to object to the discovery plan, but the mother never did.[6]

2.  Judge's findings.  "In care and protection cases, the judge's subsidiary findings must be proved by a preponderance of the evidence and will only be disturbed if clearly erroneous." Care & Protection of Vick, 89 Mass. App. Ct. 704, 706 (2016). "Parental unfitness is determined by considering a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age."  Id.  The judge's findings must prove "clearly and convincingly that the [parent is] currently unfit to provide for the welfare and best interests of [the child]." Id., quoting Adoption of Quentin, 424 Mass. 882, 886 (1997). Here, the mother argues that some of the judge's findings are clearly erroneous and, in their absence, the department failed to meet its burden.

We are not persuaded.  There was ample evidence of the mother's current unfitness.  The judge found that, without credible evidence, the mother accused the father of sexually abusing Peony and "has obsessively sought action from police,

_____

[6] We decline the mother's invitation to apply a substantial risk of a miscarriage of justice to the discovery order.  "That standard is reserved for criminal cases . . . [and] [w]e have never applied it to a care and protection case."  Care & Protection of Doretta, 101 Mass. App. Ct. 584, 592 n.6 (2022), further appellate review denied, 491 Mass. 1103 (2023).

9

the DA and medical treatment providers to provide her with validation of her concerns," and has harmed Peony by repeatedly "questioning her about sexual abuse and checking her genitalia for signs of abuse."  Thus even if we were to conclude that the evidence had been insufficient to support the finding, challenged by the mother, that she inflicted the marks on Peony's back, there was "overwhelming other evidence supporting the judge's ultimate findings and conclusions," and any error was harmless.  Adoption of Donald, 49 Mass. App. Ct. 908, 910 (2000).[7]

As to that finding, the mother contends that it is based solely on comments from the physician who examined Peony on July 9, 2019 that "there is a possibility that the mother, with her extreme preoccupation and with her desire to prevent the child from being with the father, may be causing the child to undergo multiple unnecessary exams . . . and may even be capable of fabricating evidence."  Although there was no direct evidence of how Peony sustained the marks on her back, circumstantial evidence is sufficient to meet the department's burden in child

_____

[7] The mother also argues that the judge erred in concluding that between April 7, 2014 and June 7, 2021, the mother contacted police 106 times; she contends a more accurate number is fifty calls related to Peony over a twenty-six month period between April 2019 and June 2021.  The judge described the mother's contacts with police as both excessive and obsessive, and that finding is supported by the record.  There was no error.

10

custody cases.  See Adoption of Keefe, 49 Mass. App. Ct. 818, 824-825 (2000).  "If conflicting inferences are both reasonable and possible, it is for the trier of fact to determine which is true."  Id. at 825.  Here, the mother's frustration that the pediatrician's July 8, 2019 examination found no evidence of sexual abuse, the examining physician's failure to observe marks on Peony's back on that date, the mother's repeated allegations against the father despite the allegations being unsupported by medical providers, the department, or law enforcement, and the timing of the accusations after the mother had regained custody of Peony for many hours, permit the inference that the mother inflicted the marks.[8]

3.  Sufficiency of the evidence.  The mother challenges the judge's conclusion that "[the m]other's unaddressed mental health issues pose a risk of serious abuse or neglect to [Peony]."  The mother "acknowledged at trial[] certain mental health difficulties over the course of this case, agreeing for example, that she was 'having a hard time' mentally," called police repeatedly, and that she "overreacted" to a scab she found on Peony's head -- bringing it to the police and demanding

_____

[8] To the extent the grandmother so testified, the judge was not required to credit the grandmother's testimony that the mother was never alone with Peony such that the mother had no opportunity to inflict the marks.  See Care & Protection of Three Minors, 392 Mass. 704, 711 (1984) (judge "not obliged to believe the mother's testimony or that of any other witness").

11

that it be tested to determine whether Peony had been burned. At the time of trial, she was attending regular visits with Peony and meeting with her social worker but was not engaged with any mental health services. The mother contends that because Peony remains a well-adjusted, happy child who is cooperative with her visits with the mother, the mother's conduct has not harmed her. However the father has had primary custody since 2019, and the mother's visits have been supervised. Furthermore, the judge was convinced that "[i]n the absence of any treatment . . . [the mother would] continue to obsessively question [Peony], and check the child's body and genitalia, for what she believes will be signs of sexual abuse" and may even harm Peony "to provide some evidence of abuse." While mother may initially have acted reasonably in ensuring that the proper authorities investigated her concerns, her refusal to accept the results of those investigations, coupled with repeated unsupported accusations, inquiries, and examinations of Peony support the judge's conclusion. On this record, we cannot say the judge's conclusion was clearly erroneous or amounted to an error of law. Moreover, to the extent that the mother contends that the judge relied on the fact that the mother has mental health difficulties, alone, the judge's findings "explicitly recognized that mental illness per se is not grounds" to make custody decisions. Adoption of

12

Eduardo, 57 Mass. App. Ct. 278, 282 (2003).  "We are satisfied that the judge properly focused on the adverse effects that parental behavior had on this parent's ability to provide for [Peony's] welfare and best interests, and not on the mother's mental illness."  Id.  The judge's findings clearly and specifically show the connection between the mother's mental health difficulties and harm or potential harm to Peony.

Judgment affirmed.

By the Court (Meade, Hershfang & D'Angelo, JJ.[9]),

*Joseph F. Stanton*

Clerk

Entered:  October 24, 2023.

---

[9] The panelists are listed in order of seniority.