NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1110

ADOPTION OF YVES.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial in the Juvenile Court, a judge found the mother unfit to parent Yves, awarded permanent custody of Yves to the Department of Children and Families (department), and terminated the mother's parental rights.[2]  On appeal, the mother argues that the department failed to make reasonable efforts to reunify her with Yves, and that the judge erred in finding that the mother's unfitness was not temporary and in applying several statutory factors against her.  We affirm.

1.  Background.  We summarize the facts as found by the judge, all of which find ample support in the record.

---

[1] A pseudonym.

[2] The father's rights were also terminated; he is not a party to this appeal.

a.  The mother.  The mother first became involved with the department in 2007 when she was a child and the department filed a petition pursuant to G. L. c. 119, § 24, for the mother's protection.  The mother was placed with a foster parent, who later adopted her in 2009, and the case was closed.  From June 2017 to August 2018, the mother was in the department's custody as a result of a child requiring assistance petition.  The mother stopped attending school at the age of fifteen, and ran from her placements, ultimately returning to live with the maternal grandmother when she turned eighteen years old.

As a child, the mother had an individualized education plan for her low intelligence quotient of 67 and received services from the Department of Developmental Services (DDS).  She was diagnosed with multiple mental health conditions,[3] was prescribed medications for these conditions, and participated in therapy from the ages of fifteen to eighteen.  The mother was hospitalized as a child for suicidal ideation and self-injurious behavior.  One year before Yves was born, the mother stopped her mental health treatment, medications, and DDS services and began to self-medicate daily with marijuana, smoking "one or two blunts per day."  She relied heavily on her supports, i.e., the

---

[3] The mother has been diagnosed with attention deficit hyperactivity disorder, generalized anxiety disorder, oppositional defiant disorder, depression, and bipolar disorder.

maternal grandmother and the father.  The mother admitted to cutting her wrists when she gets upset and as recently as May 2022, cut herself after a fight with the father.

b.  <u>The child</u>.  The department became reinvolved with the mother shortly after Yves was born in 2020, when the department received two reports, filed pursuant to G. L. c. 119, § 51A (51A reports), alleging neglect of Yves.  The reports alleged that Yves was born substance exposed to marijuana and that the mother could not control her anger, presenting as irrational, erratic, and lacking impulse control.  She yelled and was abusive to the nursing staff and lacked basic childcare supplies such as a car seat, crib, and diapers.  On one occasion, the hospital staff called the police due to the parents' verbal aggression towards them.  The mother left the hospital against medical advice.  The allegations in the 51A reports were supported after an investigation conducted pursuant to G. L. c. 119, § 51B (51B investigation), and the case was opened for services.

The department attempted to connect the mother with numerous services, making referrals to early intervention services, two parent partner programs, and DDS services.  The mother did not follow up with three early intervention referrals, and the while the mother completed an intake for the fourth referral, her case was closed when she failed to show up for a scheduled appointment.  The department social worker

3

offered to arrange childcare, but the mother declined and said she could "watch [her] own kid."  The mother was assigned a parent partner, Alayjah Flores, and received assistance from Flores with completing her DDS application and other tasks.  The DDS application was not completed because the mother did not sign it, and despite efforts by DDS workers to contact the mother, she never signed the application and never received DDS services.  Flores also referred the mother to a "Nurturing Family Program" and transported the mother to an intake appointment, but the mother did not attend the follow-up appointment.  The mother had difficulty maintaining contact with her service providers; and she failed to sign or comply with her action plan, sign releases, or engage in therapy or a parenting program.

c.  The child's removal.  On August 23, 2021, Flores conducted a home visit with the mother at the maternal grandmother's home.  The father became upset because Flores did not greet him when she arrived.  The mother yelled at Flores.  The mother's younger brother entered the room holding Yves.  The father attacked the mother's brother, and Yves was dropped to the floor.  The maternal grandmother called the police and the department.  The father was arrested.  Three additional 51A reports were filed, and later supported after a 51B investigation.  One of the 51A reports alleged that after the

incident, the mother was emotional and screaming while walking in the middle of the street with Yves in a stroller. The department filed a petition pursuant to G. L. c. 119, § 24, and obtained temporary custody of Yves after the judge found that he was in need of care and protection.

d. _Departmental involvement_. After Yves was removed, the department had difficulty reaching the mother, as the parents changed their phone number numerous times and did not respond to calls and text messages. The mother was assigned a new parent partner; this social worker attempted to visit the mother and the father six times from August through October 2021. The mother was ultimately discharged from the program due to lack of engagement. She refused to sign her action plan and releases because the father persuaded her not to. She completed five hours of a parenting class in the fall 2022, but did not complete the following eight classes necessary to receive a certificate of completion. She admitted she could spend an hour a week in therapy but chose not to participate. The judge found that the mother "never meaningfully nor substantially engaged in the tasks on her Action Plan pursuant to [the father's] advice that she did not need to engage in services."

e. _Visitation_. The mother missed at least half of her visits with Yves and frequently ended the visits early. Some of the visits were canceled due to the mother's failure to confirm

the day before; others were canceled or missed by the mother. The mother canceled one visit with Yves to accompany the father to a court appearance.  Despite encouragement to do so, the mother did not bring food, toys, or supplies to visits.

f.  The mother's relationship with the father.  At the time of trial, the mother and the father had been in a relationship for four years.  The mother was heavily influenced by her relationship with the father:  she sold her Supplemental Nutrition Assistance Program benefits so that the father could purchase a motorcycle; the father took the mother's electronic benefits transfer card to work, leaving her unable to purchase food; and the mother and the father shared one cell phone.  The police responded to altercations between the mother and the father five times in 2022.  Throughout the case, the father refused to sign his action plan and releases and persuaded the mother not to sign hers.

g.  Goal change and termination trial.  On May 26, 2022, the department's goal for Yves was changed to adoption.  After three days of trial in October and November 2023, the judge terminated the mother's parental rights, finding that the mother was unfit to parent Yves and that termination was in Yves's best interests.  The judge also found that the department made reasonable efforts to prevent the need to remove Yves, preserve

6

the biological ties between Yves and the mother, and reunify Yves and the mother.  This appeal followed.

2.  <u>Discussion</u>.  The mother contends that the judge erred in finding that her unfitness[4] was not temporary because the department failed to provide her with "reasonable and accessible services designed to help her reunify her with [Yves]."  Because of this alleged failure, the mother argues that the judge erred in applying certain G. L. c. 210, § 3 (<u>c</u>), factors.

a.  <u>Reasonable efforts</u>.  "[T]he department must make 'reasonable efforts' aimed at restoring the child to the care of the natural parents."  <u>Adoption of Ilona</u>, 459 Mass. 53, 60 (2011), quoting <u>Adoption of Leonore</u>, 55 Mass. App. Ct. 275, 278 (2002).  Where, as here, the mother has cognitive limitations, the department's duty to make reasonable efforts includes providing "services that accommodate the special needs of a parent."  <u>Adoption of Ilona</u>, <u>supra</u> at 61.  However, it is also "well-established that a parent must raise a claim of inadequate services in a timely manner so that reasonable accommodations may be made."  <u>Adoption of Daisy</u>, 77 Mass. App. Ct. 768, 781 (2010), <u>S.C.</u>, 460 Mass. 72 (2011), citing <u>Adoption of Gregory</u>, 434 Mass. 117, 124 (2001).  The mother first challenged the department's "de minimis" efforts regarding her cognitive

_____

[4] The mother did not contest her fitness at the time of trial.

7

limitations at trial; this challenge was untimely.[5]  See Adoption

of Gregory, supra (parent may not raise inadequate services

claim alleging that department failed to accommodate disability

for first time at termination proceeding).

The mother contends that her claim of inadequate services

is not untimely because her cognitive limitations and difficulty

accessing services were a "theme that ran through the life of

the case."  Adoption of Chad, 94 Mass. App. Ct. 828, 839 n.20

(2019).  The mother's comparison to Chad is inapposite.  Chad

was decided before our courts explained the framework to raise a

claim of inadequate services, see Care and Protection of

Rashida, 488 Mass. 217 (2021), and Adoption of Yalena, 100 Mass.

App. Ct. 542 (2021), and the mother was represented by counsel

who could have properly and timely raised the issue.  See

Adoption of Gregory, 434 Mass. at 124.  The facts in Chad are

also readily distinguishable.  There, the mother's cognitive

---

[5] The mother claims that she sent the department a letter
requesting reasonable accommodations in July 2022.  The letter
is not part of the trial record, however, and it was improper
for the mother to attach it to her reply brief.  See Adoption of
Gertrude, 99 Mass. App. Ct. 817, 820 (2021) (appellate review is
limited to trial record).  Furthermore, the mother acknowledges
that she never filed a motion requesting a reasonable efforts
determination under G. L. c. 119, § 29C; nor did she file an
abuse of discretion motion.  See Care and Protection of Rashida,
488 Mass. 217, 230 (2021); Adoption of Yalena, 100 Mass. App.
Ct. 542, 549 n.14 (2021).  We need not consider claims of
inadequate services not properly raised below.  See Adoption of
Daisy, 77 Mass. App. Ct. at 781.

issues and weight-related immobility were the department's primary concern; she received specialized assistance from the DDS, and meaningfully engaged in services offered by DDS and the department. See Adoption of Chad, supra at 829-835. Here, the mother chose not to receive specialized assistance, admitted she could attend therapy but chose not to, and rejected or discontinued the services offered to her by the department. Her claim of inadequate accommodations and services was not timely raised and is therefore waived, Adoption of Daisy, 77 Mass. App. Ct. at 781, citing Adoption of Gregory, supra, and in any event, the record does not support her claim. See Adoption of West, 97 Mass. App. Ct. 238, 245 (2020). The mother has failed to demonstrate that the judge's finding that the department made reasonable reunification efforts was clearly erroneous. Id. at 245-246.

b. Future unfitness. The mother did not contest her unfitness at the time of trial and now maintains that the judge erred in finding that her unfitness was likely to continue indefinitely because the department failed to provide services to her. "We give substantial deference to the judge's findings of fact and decision, and will reverse only 'where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion.'" Adoption of Luc, 484 Mass. 139, 144 (2020), quoting Adoption of Ilona, 459 Mass. at 59.

9

Throughout this case, the mother did not address her behavioral health or cognitive limitations, despite having previously participated in therapy and received services from DDS. The department made numerous referrals for services, helped the mother fill out her DDS application, and transported her to an intake appointment with the Nurturing Family Program. The mother did not meaningfully engage with these services, and as a result, the judge found that her unwillingness to do so "indicates that her behavior will continue into the future." The failure to comply with services and action plan tasks is relevant to a parent's fitness. See Adoption of Rhona, 63 Mass. App. Ct. 117, 126 (2005). A parent's unaddressed mental health conditions that affect her capacity to assume parental responsibility and her unwillingness to obtain treatment are also relevant to the fitness determination. See Adoption of Luc, 484 Mass. at 146-147; Adoption of Frederick, 405 Mass. 1, 9 (1989). The judge did not abuse her discretion in finding the mother unfit and that her unfitness was likely not temporary.

c. Statutory factors. The mother contends that it was an error of law for the judge to apply three statutory factors, all of which required the department to have "provided the parent with services intended to rectify [her] parental challenges." For example, to apply G. L. c. 210, § 3 (c) (ii), the judge must find that the parent was "offered or received services intended

10

to correct the circumstances which led to the abuse or neglect and refused or [was] unable to utilize such services on a regular and consistent basis."[6]  We need not reach this argument, as it is based on the mother's waived contention that the department provided inadequate services, a claim that in any event we have determined was unsupported by the record.

Decree affirmed.

By the Court (Blake, C.J.,
Shin & Walsh, JJ.[7]),

*Paul Little*

Clerk

Entered:  June 2, 2025.

---

[6] The mother challenges the application of factors (ii), (v), and (vi).

[7] The panelists are listed in order of seniority.